[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10778

_____

D.C. Docket No. 9:13-cv-80437-KAM

DAVID BENOIT MECH,
d.b.a. The Happy/Fun Math Tutor,

    Plaintiff-Appellant,

versus

SCHOOL BOARD OF PALM BEACH COUNTY, FLORIDA,

    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 23, 2015)

Before MARCUS, WILLIAM PRYOR, and JILL PRYOR, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

    The Supreme Court once predicted that "[t]here may be situations in which it is difficult to tell whether a government entity is speaking on its own behalf or is

providing a forum for private speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 470, 129 S. Ct. 1125, 1132 (2009). This appeal presents one of those situations. David Mech complains that the School Board of Palm Beach County, Florida, violated his constitutional right to free speech, U.S. Const., amends. I, XIV, when three of its schools removed banners for Mech's tutoring business from their fences. The schools removed the banners after they discovered that Mech's tutoring business shares a mailing address with his pornography business. The district court entered summary judgment against Mech because the schools did not remove the banners based on their content. We affirm, but on a different ground. We conclude that the Free Speech Clause of the First Amendment does not protect Mech because the banners are "government speech." *Summum*, 555 U.S. at 467.

## I. BACKGROUND

David Mech has a unique resume. He provides a math tutoring service in Palm Beach County under the name "The Happy/Fun Math Tutor." He has a bachelor's degree from Michigan State University, a master's degree from Arizona State University, and is enrolled in a Ph.D. program at Florida Atlantic University. He has taught mathematics at Palm Beach State College and is certified to teach secondary math in Florida. Mech is also a retired porn star. He has performed in hundreds of pornographic films. And he owns Dave Pounder Productions LLC, a

company that formerly produced pornography. The Happy/Fun Math Tutor and Dave Pounder Productions share a mailing address in Boca Raton, Florida.

In 2008, the School Board—which oversees the Palm Beach County School District—adopted a pilot program for its schools to hang banners on their fences to recognize the sponsors of school programs. The banner program was codified in 2011 as Policy 7.151, "Business Partnership Recognition - Fence Screens." *See* Sch. Bd. Policies 7.151, http://www.boarddocs.com/fl/palmbeach/Board.nsf/goto?open&id=9R8NDB5AD0A1#. Subsection (1) of the Policy states its purpose:

> **Purpose.** -- The District recognizes that athletic sponsors and other business partners provide a vital role in sponsorship of key programs within our schools. As such, schools have increased needs to visibly recognize these partners in the community. In the interests of community aesthetics and in consideration of local ordinances that may prohibit or restrict banners and advertising, these uniform standards have been developed. By permitting the recognition of business partners on school campuses, it is not the intent of the School Board to create or open any Palm Beach County School District school, school property or facility as a public forum for expressive activity, nor is it the intent of the School Board to create a venue or forum for the expression of political, religious, or controversial subjects which are inconsistent with the educational mission of the School Board or which could be perceived as bearing the imprimatur or endorsement of the School Board.

*Id.* at 7.151(1). "Because the [banners] are not considered advertising," contributions by the sponsors are treated as "donations." *Id.* at 7.151(2)(b).

The Policy imposes several conditions on the banners that can be displayed. The principals of each school must "use their discretion in selecting and approving

3

business partners that are consistent with the educational mission of the School Board, District and community values, and appropriateness to the age group represented at the school." *Id.* at 7.151(2)(h). The Policy requires the banners that are visible from the road to use a uniform size, color, and font; to include a message thanking the sponsor; and to forego photographs and large logos. *See id.* at 7.151(3).

Beginning in 2010, Mech inquired about displaying a banner for The Happy/Fun Math Tutor at three schools in Palm Beach County: Omni Middle School, Spanish River Community High School, and Boca Raton Community Middle School. Representatives from the schools encouraged Mech to apply: Mech specializes in the math courses that are taught at those schools and, according to a representative of the School Board, "[h]e apparently is a very good tutor." The schools require banners to be printed in school colors and to include the message "[School Initials] Partner in Excellence." The banners can include only the name, phone number, web address, and logo of the business partner. To obtain a banner, the schools require a minimum donation of $250–$650.

Mech complied with these requirements, and the schools hung the banners displayed below on their fences.

4



In 2013, the schools removed the banners for The Happy/Fun Math Tutor. Several parents complained about the banners after discovering the common ownership of The Happy/Fun Math Tutor and Dave Pounder Productions. The schools informed Mech that his "position with Dave Pounder Productions, together with the fact that Dave Pounder Productions utilizes the same principal place of business and mailing address as The Happy/Fun Math Tutor creates a situation that is inconsistent with the educational mission of the Palm Beach County School Board and the community values."

Mech sued the School Board for violations of the First and Fourteenth Amendments and breach of contract. Both parties moved for summary judgment,

and the district court ruled in favor of the School Board. The district court ruled that the schools did not abridge the First Amendment because they removed the banners due to the common ownership of Mech's companies, not the content of the banners. The district court also rejected Mech's claims under the Fourteenth Amendment and declined to exercise supplemental jurisdiction over his claim for breach of contract.

On appeal, Mech challenges only the dismissal of his claim under the First Amendment. After the parties submitted their appellate briefs, the Supreme Court decided *Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, __ U.S. __, 135 S. Ct. 2239 (2015). Before oral argument, we ordered the parties to provide supplemental briefing on whether *Walker* affects this case.

## II. STANDARD OF REVIEW

"We review a summary judgment *de novo*." *Zibtluda, LLC v. Gwinnett Cty. ex rel. Bd. of Comm'rs*, 411 F.3d 1278, 1281 (11th Cir. 2005). Summary judgment is appropriate if, viewing the record in the light most favorable to Mech, "there is no genuine dispute as to any material fact" and the School Board "is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56). We can affirm a summary judgment "on any alternative ground fairly supported by the record." *Rozar v. Mullis*, 85 F.3d 556, 564 (11th Cir. 1996).

### III. DISCUSSION

The parties disagree about how to classify the school banners. According to Mech, the banners for The Happy/Fun Math Tutor are private speech in a limited public forum. As such, the First Amendment forbids the School Board from acting unreasonably or engaging in viewpoint discrimination. *See Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 679 n.11, 130 S. Ct. 2971, 2984 n.11 (2010). The School Board argues that the removal of the banners was reasonable and viewpoint neutral. It also argues, in the alternative, that the banners are government speech.

If the banners are government speech, Mech loses. The Free Speech Clause of the First Amendment "restricts government regulation of private speech; it does not regulate government speech." *Summum*, 555 U.S. at 467, 129 S. Ct. at 1131. When the government exercises "the right to 'speak for itself,'" it can freely "select the views that it wants to express." *Id.* at 467–68, 129 S. Ct. at 1131 (quoting *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229, 120 S. Ct. 1346, 1354 (2000)). This freedom includes "choosing not to speak" and "speaking through the . . . removal" of speech that the government disapproves. *Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003, 1012 (9th Cir. 2000) (citing *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 674, 118 S. Ct. 1633, 1639 (1998)). Government speech is regulated primarily by "the political process," not

the Constitution. *Southworth*, 529 U.S. at 235, 120 S. Ct. at 1357. Because characterizing speech as government speech "strips it of all First Amendment protection," *Walker*, 135 S. Ct. at 2255 (Alito, J., dissenting), we do not do so lightly.

The Supreme Court has not articulated a precise test for separating government speech from private speech, but its recent decision in *Walker* concluded that the specialty license plates for motor vehicles in Texas were government speech based on three factors. First, "the history of license plates" suggests "they long have communicated messages from the States." *Id.* at 2248 (majority opinion). States have featured graphics and slogans on license plates since the early twentieth century, and Texas has approved specialty license plates "for decades." *Id.* Second, reasonable observers would conclude that Texas "agree[s] with the message displayed" on specialty license plates. *Id.* at 2249. Each plate bears the name "TEXAS" at the top; and Texas issues the plates, regulates their disposal, and owns the designs. *Id.* at 2248. License plates "are, essentially, government IDs," and individuals choose specialty plates over bumper stickers because they hope to convey the impression that "the State has endorsed th[e] message." *Id.* at 2249. Third, Texas exercises "direct control over the messages" on specialty license plates. *Id.* The Texas Department of Motor Vehicles Board "must approve every specialty plate design proposal," *id.*, and Texas dictates "the

8

design, typeface, color, and alphanumeric pattern for all license plates," *id.* (quoting 43 Tex. Admin. Code § 504.005(a)). These factors taken together established that the specialty license plates were government speech.

The three factors that the Supreme Court applied in *Walker* came from *Summum*, a decision in which the Court concluded that privately donated monuments in public parks were government speech. *See Summum*, 555 U.S. at 470–72, 129 S. Ct. at 1133–34. There, the Court explained that "[g]overnments have long used monuments to speak to the public." *Id.* at 470, 129 S. Ct. at 1132. Moreover, "[i]t certainly is not common for property owners to open up their property for the installation of permanent monuments that convey a message with which they do not wish to be associated." *Id.* at 471, 129 S. Ct. at 1133. "[T]here is little chance that observers will fail to appreciate the identity of the speaker" when they view a monument in a public park, *id.*, especially because "[p]ublic parks are often closely identified in the public mind with the government unit that owns the land," *id.* at 472, 129 S. Ct. at 1133. Finally, the city "'effectively controlled' the messages sent by the monuments in the [p]ark by exercising 'final approval authority' over their selection." *Id.* at 473, 129 S. Ct. at 1134 (quoting *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 560–61, 125 S. Ct. 2055, 2062–63 (2005)). "The monuments that are accepted, therefore, are meant to convey and have the

effect of conveying a government message, and they thus constitute government speech." *Id.* at 472, 129 S. Ct. at 1134.

In the light of *Walker* and *Summum*, we conclude that this case also involves government speech. Although the parties have not presented evidence about the history of banners on school fences, the banners bear the imprimatur of the schools and the schools exercise substantial control over the messages that they convey. We do not mean to suggest that the factors identified in *Walker* and *Summum* are exhaustive or that they will be relevant in every case. *See Walker*, 135 S. Ct. at 2249. Whether speech is government speech is inevitably a context specific inquiry. But these decisions provide a useful framework. Below, we address how each of the three factors from *Walker* and *Summum*—history, endorsement, and control—applies to the banners in Palm Beach County.

## A.  History

The record contains no evidence about the history of banners on school fences. And the banner program in Palm Beach County has a relatively recent vintage: the School Board launched it in 2008 and codified it in 2011. On this record, we cannot conclude that such banners "long have communicated messages from the [government]." *Id.* at 2248.

The absence of historical evidence weighs in Mech's favor, but it is not decisive. A medium that has long communicated government messages is more

likely to be government speech, *see id.*; *Summum*, 555 U.S. at 470, 129 S. Ct. at 1132–33, but a long historical pedigree is not a *prerequisite* for government speech. For example, in *Johanns v. Livestock Marketing Association*, the Supreme Court concluded that a promotional campaign for the beef industry was government speech without conducting any historical inquiry or citing any historical evidence. *See* 544 U.S. at 560–67, 125 S. Ct. at 2062–66. According to the Court, the promotional campaign—which was written by a nongovernment entity—was government speech because "[t]he message . . . is effectively controlled by the Federal Government itself." *Id.* at 560, 125 S. Ct. at 2062. *Johanns* makes clear that a particular medium may be government speech based solely on present-day circumstances. For example, if the School Board posted a message about school closings for inclement weather on Facebook or Twitter, we would have little difficulty classifying the message as government speech, even though social media is a relatively new phenomenon. *See, e.g.*, *Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 331 (1st Cir. 2009) ("[T]he Town engaged in government speech by establishing a town website and then selecting which hyperlinks to place on its website."); *Page v. Lexington Cty. Sch. Dist. One*, 531 F.3d 275, 288 (4th Cir. 2008) (school website and email communications were government speech). The absence of historical evidence can be overcome by other indicia of government speech. And, as we explain below, such other indicia are present here.

## B. *Endorsement*

The second factor—that observers reasonably believe the government has endorsed the message—strongly suggests that the banners are government speech. The banners are hung on school fences, and government property is "often closely identified in the public mind with the government unit that owns the land." *Summum*, 555 U.S. at 472, 129 S. Ct. at 1133; *see, e.g.*, *United Veterans Mem'l & Patriotic Ass'n v. City of New Rochelle*, 72 F. Supp. 3d 468, 474–75 (S.D.N.Y. 2014) (Gadsden flag at a government armory was government speech), *aff'd*, No. 15-120 (2d Cir. Sept. 9, 2015); *Am. Atheists, Inc. v. Davenport*, 637 F.3d 1095, 1115–16 & n.8 (10th Cir. 2010) (cross memorials on the side of public highways were government speech). Although banners are not "government IDs," *Walker*, 135 S. Ct. at 2249, schools typically do not hang them on school property for long periods of time if they contain "message[s] with which the[ schools] do not wish to be associated," *id.* (first alteration in original) (quoting *Summum*, 555 U.S. at 471, 129 S. Ct. at 1133). Moreover, "[t]he governmental nature" of the banners "is clear from their faces." *Id.* at 2248. Like the word "TEXAS" on the specialty license plates in *Walker*, each banner bears the school's initials and is printed in school colors. And the banners identify the sponsor as a "Partner in Excellence" with the school. The word "partner" suggests that the sponsor has a close relationship with the school—*i.e.*, that the sponsor is an "associate" or is "engaged together in the

same activity, occupation, etc." *Partner*, Oxford English Dictionary (online ed.). Indeed, this positive association is likely why sponsors participate in the banner program, instead of appealing to parents and students through "purely private" media. *Walker*, 135 S. Ct. at 2249.

Mech contends that the banners for The Happy/Fun Math Tutor are private speech because they are essentially advertisements; they invite the reader to do business with the sponsor, not the school. Mech bolsters his argument by identifying other examples of "Partners in Excellence" that provide services totally unrelated to the school, such as Maggiano's Italian restaurant, Atlas Roofing, and The Journey Church. The schools must not be speaking on their own behalf, Mech reasons, because they neither know nor care whether these miscellaneous businesses provide "excellent" services.

Mech misunderstands the nature of the government message conveyed by the banners. The banners for "Partners in Excellence" are the schools' way of saying "thank you." The School Board requires the banners to expressly "thank the sponsor." Sch. Bd. Policies 7.151(3)(e). Indeed, the entire purpose of the banner program is for the schools to "visibly recognize" the "business partners" that "provide a vital role in sponsorship of key programs." *Id.* at 7.151(1). The sponsors recognized on the banners have "provide[d] adequate funding for an important program or activity at the school." *Id.* at 7.151(3)(g). To return the favor, the

schools display the sponsor's information on school property where parents and students will see it. Such gestures of gratitude are a common form of government speech. *See, e.g.*, *Wells v. City & Cty. of Denver*, 257 F.3d 1132, 1141–42 (10th Cir. 2001) (sign on government property thanking the corporate sponsors of the city's Keep the Lights Foundation was government speech); *Knights of the Ku Klux Klan v. Curators of the Univ. of Mo.*, 203 F.3d 1085, 1093 (8th Cir. 2000) (acknowledgements by a public radio station of the donors that contributed to its programming were government speech). The schools in Palm Beach County have an interest in expressing gratitude to *all* of their sponsors, regardless of the services or the quality of services that they provide. "The fact that the sponsors may receive an incidental benefit from the [message]—in the form of publicity and good will—does not refute . . . the [governmental] purpose. Indeed, any benefit that accrues to the sponsors ultimately serves the [government's] interests by providing current and putative sponsors with an incentive to contribute to [government programs] in the future." *Wells*, 257 F.3d at 1142.

The banners for The Happy/Fun Math Tutor are distinguishable from purely private advertising in other ways as well. Private advertisements are typically designed by the advertisers: they convey the words, pictures, and colors that the advertiser wants to convey. Even when they are located on government property, private advertisements typically bear "no indicia that the speech [i]s owned or

14

conveyed by the government." *Walker*, 135 S. Ct. at 2252. The banners on the school fences, by contrast, are printed in school colors and are subject to uniform design requirements imposed by the schools. Each banner bears the initials of the school and identifies the sponsor as a "partner" with the school. Unlike an advertisement on a city bus, the banners are "formally approved by and stamped with the imprimatur of [the schools]." *Id.* Observers would reasonably interpret them as "conveying some message on the [school's] behalf." *Id.* (quoting *Summum*, 555 U.S. at 471, 129 S. Ct. at 1133). That the sponsors "pay annual fees in order to display [the banners]" does not alter this conclusion. *Id.*

Furthermore, the banners for The Happy/Fun Math Tutor are qualitatively different from the other banners that Mech identifies. His banners pertain to an education-related service—namely, math tutoring. Because schools are experts in matters of education, *see generally Meyer v. Nebraska*, 262 U.S. 390, 400, 43 S. Ct. 625, 627 (1923), an observer who saw a banner for tutoring services on school property with the imprimatur "[School Initials] Partner in Excellence" would reasonably conclude that the school was endorsing the services of this tutor. Indeed, school representatives encouraged Mech to apply for a banner because he taught the same math courses that they offered and because "[h]e apparently is a very good tutor." Even if we were to assume that the banners for The Happy/Fun Math Tutor are advertisements, observers would view them as government-

15

sponsored advertisements because tutoring services are related to the schools' educational mission.

Mech further contends that the schools have disclaimed the governmental nature of the banners. He points to Policy 7.151 as the source of this supposed disclaimer. Mech argues that, according to subsection (1) of the Policy, the banners do not "bear[] the imprimatur or endorsement of the School Board."

But Mech misreads the Policy. Subsection (1) expresses the intent of the School Board not to endorse some kinds of messages:

> [I]t is not the intent of the School Board to create or open any Palm Beach County School District school, school property or facility as a public forum for expressive activity, nor is it the intent of the School Board to create a venue or forum for the expression of political, religious, or controversial subjects which are inconsistent with the educational mission of the School Board or which could be perceived as bearing the imprimatur or endorsement of the School Board.

Sch. Bd. Policies 7.151(1). Subsection (1) does not say that the banners do not "bear[] the imprimatur or endorsement of the School Board." Instead, it says *because* the banners may be perceived as "bearing the imprimatur or endorsement of the School Board," the schools must be able to control the messages that they convey. The School Board seeks to avoid "the expression of political, religious, or controversial subjects." *Id.* This concern is why the School Board requires principals to "use their discretion in selecting and approving business partners." *Id.*

16

at 7.151(2)(h). Read in context, subsection (1) is not a disclaimer, but a recognition that the banners will likely be attributed to the schools.

### C. Control

The third factor—the government's control over the message—strongly suggests that the banners are government speech. Like the board that approves specialty license plates in Texas, the schools control "the design, typeface, [and] color" of the banners. *Walker*, 135 S. Ct. at 2249. The schools also dictate the information that the banners can contain, regulate the size and location of the banners, and require the banners to include the school's initials and the message "Partner in Excellence." Furthermore, the principals at the schools "must approve every [banner]" before it goes up on a fence. *Id.* "This final approval authority allows [the school] to choose how to present itself" to the community. *Id.* And it ensures that the messages on the banners are "effectively controlled" by the schools. *Summum*, 555 U.S. at 473, 129 S. Ct. at 1134 (quoting *Johanns*, 544 U.S. at 560, 125 S. Ct. at 2062).

Mech contends that the schools do not meaningfully control the messages on the banners because the bulk of the information—the logo, name, phone number, and web address—comes from the sponsor, not the school. But "[t]he fact that private parties take part in the design and propagation of a message does not extinguish [its] governmental nature." *Walker*, 135 S. Ct. at 2251. The monuments

17

in *Summum* and the license plates in *Walker* were government speech, even though private entities designed them. *See id.*; *Summum*, 555 U.S. at 470–71, 129 S. Ct. at 1133. Here, the sponsors have even less say-so about the messages on the banners. The schools do not allow the banners to list anything but the sponsor's name, contact information, and preexisting business logo. "The message set out in [a banner] is from beginning to end the message established by the [school]." *Johanns*, 544 U.S. at 560, 125 S. Ct. at 2062.

We conclude that the banners for The Happy/Fun Math Tutor are government speech. Despite the lack of historical evidence in the record, the banners exhibit strong indicia of government endorsement and control. Accordingly, Mech's claim under the First Amendment fails. His redress lies with the political process, not the courts. *See Southworth*, 529 U.S. at 235, 120 S. Ct. at 1357.

## IV. CONCLUSION

We **AFFIRM** the judgment against Mech.